Charging Bison, L.L.C. v. Interstate Battery Franchising and Development, Incorporated. May it please the Court, the District Court erred when it declined to stay a pending jams arbitration proceeding. Initiated by Interstate Battery for the purpose of securing an award from a panel of arbitrators relating to charging Bison's right to terminate the franchise relationship. So the error occurred because the franchise agreement between the parties expressly carved out from any duty to arbitrate any issues and disputes relating to the propriety of a franchise termination. Interstate Battery... But was there a termination? There was not a termination. What happened? Then you're outside that language. I don't agree, Your Honor, and here's why. The jams proceeding initiated by Interstate Battery sought a declaratory judgment that charging Bison had no right to terminate the franchise relationship. If it were successful in securing that result from an arbitration panel, it would have precluded charging Bison from raising, based on the facts that it contended supported a termination. It would have been precluded from later litigating that same issue, which was, under the terms of the franchise agreement, carved out from arbitration. In essence, what it sought was a declaratory judgment, which was nothing more than a mirror image of the underlying claims by charging Bison for termination. So to address Your Honor's question in a different way, yes, there had not been any formal termination yet, but charging Bison on September 16, 2016, issued a letter to Interstate Battery laying out its demand for termination of the franchise relationship based on a series of facts, which I won't trouble the Court going through that unless Your Honor would like to hear it, but laid out basic facts which it said were egregious enough to support a termination. Now, why was that letter sent? The letter was sent, instead of a formal notice of termination, to hopefully invite a discussion about resolving the issue. That's the reason the letter was sent. What did Interstate Battery do? Ten days later, and the letter asked for a response in ten days. Ten days later, Interstate Battery walks into JAMS and files an arbitration demand and says, well, there's been no termination yet, and we think this dispute is arbitrable. But it wasn't, and it wasn't because the arbitration agreement, Interstate Battery's own form arbitration agreement, on its face, carved out every conceivable dispute relating to termination. Here's how they did that. In paragraph 35A of the arbitration agreement, the basic agreement to arbitrate we submit is very narrow. The basic agreement to arbitrate says during the term of this agreement, the parties agree to arbitrate any issues relating to the agreement and their relationship, except for, and this is also within paragraph 35A, except for any issues relating to the propriety of the termination, of a termination of the agreement. That's contained in 35C. Also in that same arbitration agreement, any disputes which are commenced after termination of the agreement will be litigated. So the basic arbitration agreement was quite limited. It left open for litigation, post-termination, any disputes between the parties, whether it was an application by Interstate Battery to enjoin use of the trademarks for the recovery of money, it says the franchisee didn't pay, anything post-termination is carved out for litigation. But even during the term of the agreement, the provision expressly carves out any disputes relating to the propriety of termination. Now, during the term of the agreement, of course, the parties could issue a notice of termination, or as we did in this instance, raise issues. Maybe you've answered it, but I don't understand that you're arguing something that the arbitrator has to decide. That's correct. If Your Honor is asking whether this issue that we're before the court on today should be decided by the arbitrator rather than the court, my answer is twofold. One, I don't believe this court can address that issue. It was raised below in the district court that the parties, by agreeing to the jams arbitration rules, also agree because those rules say the arbitrator decides issues of his or her own jurisdiction. This court has said so many times that issues about whether it is an arbitrable issue is for the arbitrator to decide. You are correct, Your Honor, that where the parties have, quote, unquote, clearly and unmistakably agreed that arbitrability issues are to be decided by an arbitrator. Yes, Your Honor is absolutely correct. We submit, however, that there was no clear and unmistakable agreement here. And we say that because this is not like those cases this court decided where the arbitration agreement is so broad, it encompasses all disputes relating to all controversies between the parties. And then coupled with that, they agree to a set of arbitration rules here, jams, that has the arbitrator decide those issues. The Petrofac case is one decision by this court that held as such. But in that case, that arbitration agreement was extremely broad. This is not that case. What do you do with the Cupper case from this court in 2016? When you adopt the jams rules, that's a clear and unmistakable intent to delegate to the arbitrator the gateway question of arbitrability. My reading of all of those cases, Your Honor, dealt with, involved very broad arbitration agreements. Here, it is clear from the language of the arbitration agreement that the parties agreed to carve out from arbitration, expressly agreed to carve out from arbitration disputes relating to termination. So it would be a waste, I submit. Well, that's always the argument. That's always the argument. The court should just jump over the gateway issue because, you know, there's no way that the arbitrator can legitimately decide this another way. And the courts have said no, no, no. When the gateway question is to be decided by the arbitrator, the arbitrator gets to decide. You're correct, Your Honor, but only when the parties have clearly and unmistakably agreed. Well, they clearly and unmistakably agreed to abide by the jams rules, and the jams rules clearly and unmistakably give the question of arbitrability to the arbitrator. I respectfully submit that it would be a waste of resources here for this court to permit that issue to go to the arbitrator, decide it, and only then to have Charging Bison, for example, raise the issue in court that it was beyond the scope of the arbitration agreement. But that's always the argument, and the courts have uniformly rejected that argument. We also submit respectfully, Your Honor, that that issue itself is not before this court on appeal. It has been waived by interstate battery because they did not file a cross-appeal challenging the district court's conclusion that it had the power under the agreement to decide the gateway issue of arbitrability. No cross-appeal on that issue was filed. Well, we look at the judgment, not necessarily the reasons. There was a denial of a stay, and we can affirm or deny that on any basis that's supportable in the record that was raised below. But here, Your Honor, interstate battery is not asking the court to affirm the district court based on other items in the record. What they are asking this court to do is reverse the district court. No, but we can affirm the district court on any grounds that are supported in the record, even if the district court didn't rely on those grounds. I understand, Your Honor. I respectfully submit that it would lead to anomalous results if interstate battery, for example, was granted summary judgment on one ground and not another, and I appealed the ground on which summary judgment was granted. It could await the briefing on the issue and then decide it wants to challenge an error made by the district court that was not made the subject of a notice of cross-appeal. I appreciate what Your Honor is saying, but I do think that this situation is different from those cases where this court looks to issues that are in the record and decides to affirm the district court. Going back to the agreement, we submit that it is so clear on this record that those issues relating to termination are carved out from the arbitration agreement. Okay. Aren't you repeating yourself, Mr. Hilliard? I am, Your Honor. I am, Your Honor. You're not required to use all the remaining seven minutes. That's fine. Unless Your Honor has any further questions, I will conclude. I've made my points. Thank you, and you've saved time for rebuttal, Mr. Hilliard. Thank you. Mr. McPhee. Yes. Good morning, Your Honors. May it please the Court. Len McPhee, appearing on behalf of Interstate Batteries, the appellee in this matter. I wanted to raise three issues for Your Honors this morning. The first is that there has been no termination. The dispute on this point relates to charging Bison's request for a declaration that it would have the right to terminate. There has been no termination. Second, there are other disputes. Well, both sides agree there's been no termination. That's where we started today. There's not an issue about that. Thank you, Your Honor. Second, there are no disputes. There are other disputes that are undisputedly or not in dispute as to whether they are subject to arbitration that have been raised and are pending. And third, in the alternative, the question of whether disputes are subject to arbitration is for the arbitrators to decide when the parties have clearly and unmistakably delegated that question to the arbitrators here pursuant to incorporation of the JAMS rules. The standards are well set. So the only issue is whether that carve-out applies to this case where there's been no termination. That's really all that we need to look at, isn't it? I think both sides would agree on that. Charging Bison's position is that the question of whether the arbitrable duty is to be decided by the arbitrator, that that is in dispute. And so I'm prepared to move on from that, Your Honor, with the understanding that everyone else in the room is in agreement, but that I heard counsel argue against that point. You can address whatever you want to. But I'm just trying to establish what it seems that there's no disagreement about. Thank you. With respect to this question of whether the nature of the dispute is carved out from the arbitration clause, I want to point out a couple of points. What the record has in it with respect to the claims in this case, according to the court's order, is that there is a dispute over charging Bison's right to terminate based on the alleged misrepresentations in the FDD and other grounds. In the record, you have our interstate batteries, actual arbitration demand in which multiple issues are raised. Those include whether system changes constituted a breach of the agreement, whether interstate battery committed or breached the implied covenant of good faith and fair dealing, whether there was fraud in the inducement. These are underlying claims, not necessarily all tied to whether there's a right to terminate. Further, charging Bison's own petition says that it's seeking a declaratory judgment that the issues raised by interstate battery in the arbitration proceeding, including the question of whether charging Bison can properly terminate, that is what they are raising. Again, Your Honor, as you pointed out, they are not claiming to have terminated. They are not claiming to have initiated any effort toward terminating. They have not sent a notice of termination. The letter that counsel referred to is not in this record, only the characterizations of the dispute, as I have just laid them out by the court and by the parties. That letter, therefore, is not before Your Honors. And the important point here is that it's conceded that there has been no termination. Let's look at the arbitration clause itself. The plain meaning and the context, when read together, show that these provisions, show that this exception is limited to instances where there are actual terminations. There has been an actual termination that has been attempted. The plain meaning uses the word propriety of any termination is the exception in 35C1. Propriety means proper. Was it proper? Was it correctly done according to the standards or requirements in the agreement? There has to have been a termination in order to make that assessment. And therefore, the plain meaning demonstrates there must have been a termination. The context, the argument here charging Bison is making is that the carve-out in 35A that says an action has to be, once an action, I'm sorry, it's not subject to arbitration if the action has been commenced after the effective date of termination would be meaningless if the, if you interpreted 35C1 to be a situation where there was an actual termination. And that's not true because if you look at the termination provisions in the agreement, Section 24B specifically allows for a termination that the notice goes out before the termination is effective. And if we look at a real world context situation, this agreement makes sense. In the franchise context, 35C, if you look at the other exceptions under 35C, they all relate to instances where you're protecting the brand. The trade secrets, trade marks, covenant not to compete, an effort to transfer the franchise agreement to an unauthorized franchisee. And again, we're talking about batteries, potentially hazardous waste here. It is in the franchisor's requirement that it have the ability to pursue and protect the brand in those instances, many times in an injunction scenario. If you look at 35D, it carves out the ability to seek injunctive relief and specifically references 35C. We have the ability to seek injunctive relief. Those are the contexts, those are the issues that the parties agreed would be carved out from arbitration. In the instance where the franchisor has sent the notice of termination, it has not taken effect yet, and the franchisee wants to dispute that, they may issue, but for 35C1, they could initiate an arbitration challenging or looking to the propriety of the termination. And then when the termination date does take effect and they ignore that termination and the franchisor pursues claims to protect the brand, in that instance, the franchisee would come in and defend the case in the court by saying, this is subject to arbitration as to whether that termination was proper or not. They could and will try to muddy the waters, delay the court's proceeding by saying that that's subject to an arbitration proceeding. This carve-out was intended so that in that instance, the franchisor would have the ability to be in court rather than have two fronts, one in arbitration that could slow down its efforts to protect the brand. When read in conjunction with each other, those clauses make sense, both in context and according to the plain meaning. There needs to be an actual termination which has been conceded isn't in this record. With respect to the other question, I wanted to point out there are four cases, this is the question as to who decides arbitrability. There are four cases from the Fifth Circuit that I wanted to point out. The Petrofac and Cooper case or Copper case both say that when the parties have incorporated into their agreement rules that have a delegation clause, that is to say that issue of arbitrability is for the arbitrator, in that instance, the parties have clearly and unmistakably agreed that that is a threshold issue. And, Your Honor, Judge Smith, in both Douglas, which was a 2014 case, and in the Kubla case, which was in 2016, laid out a protection that addresses what Charging Bison has argued here, which is that in a very, it's a tough standard of wholly groundless. And as Your Honor pointed out, that if you look at the claim that this is subject to arbitration and it is wholly groundless, that is to say it is not plausible, then the court, that's a second step in the question, and the court can refuse to transfer it to arbitrability. Here, there's no argument. In fact, Charging Bison concedes that it's not arguing wholly groundless. Under the test laid out by this Court in those four cases, did the parties agree to arbitrate at least some claims in an arbitration clause? And is there a delegation clause? Those are the two questions here. They're both answered in the affirmative. And the question goes to the arbitrator unless it is wholly groundless, which under the standards articulated in both Douglas and both with Judge Smith and Judge Owen in the Kubla case, not met here. Finally, the last point, and I won't belabor it, is that as I noted, there are a number of other claims at issue in this record in that arbitration, which under the case law, even if there was some portion of the claim that wasn't subject to arbitration, the rest is subject to arbitration, and therefore the Court's orders still stand. So we are urging affirmance on three alternative bases. Thank you. All right. Thank you, Mr. McPhee. Mr. Hilliard, you've saved time for rebuttal. Thank you. I'm only going to briefly return to a point that I made and was not too successful in arguing the first time. That's okay. But I simply want to point out one thing about the arbitration agreement and how I think this case is very different from the Petrofac and other decisions. The agreement itself has as a separate section, and this is Section C under Paragraph 35 of the Franchise Agreement, claims not subject to arbitration, and that includes any claim relating to the propriety of a termination. Again, I think that in those circumstances where the parties' underlying agreement, the document that they each sign identifies those claims that are not subject to arbitration. It could not be more clear than that. A carve-out has been made to conclude that merely because the parties also referred to JAMS rules, another set of rules that aren't attached, aren't laid out, to govern their arbitration and rules which do give the arbitrator discretion to decide that gateway issue, to conclude that that in and of itself is clearly and unmistakably evidence that the parties agreed to arbitrate an issue that they said in their agreement is not to be arbitrated, I think is incorrect, Your Honor, respectfully. Thank you, Mr. Hilliard. Thank you very much. Your case is under submission.